Evan M. McWILLIAMS (OSP No. 26030),
Petitioner,

v.

H. M. RANDALL, Director, State Board of Parole and Probation, Respondent.

Civ. No. 66-564.

United States District Court
D. Oregon.

Nov. 6, 1967.

Howard M. Feuerstein, Dennis F. Todd, Portland, Or., for petitioner.

Robert Y. Thornton, Atty. Gen., of Oregon; David H. Blunt, Asst. Atty. Gen., Salem, Or., for respondent.

## AMENDED OPINION

SOLOMON, Chief Judge:

Evan M. McWilliams seeks a writ of habeas corpus to set aside a life sentence entered June 25, 1958, by the Klamath County, Oregon, Circuit Court upon McWilliams' guilty plea to second degree murder. McWilliams is now on parole subject to the control and custody of the respondent, the Director of the State Board of Parole and Probation.

The parties submitted this case on the agreed facts in the pretrial order, the transcript of McWilliams' arraignment, and the transcript of the hearing on McWilliams' petition for state post-conviction relief.

On Saturday, June 21, 1958, McWilliams was at home. He had been married for seventeen years, but for the previous six months he had been separated from his wife, who had been living with Charlie Robinson. On this day, McWilliams' wife and Charlie Robinson came to McWilliams' house. The three of them, who were apparently friendly with each other, drank beer and whiskey and played cards. McWilliams and Robinson got into a fight. McWilliams hit Robinson, but did not seriously hurt him.

Later in the day, McWilliams and Robinson again had a fight. According to McWilliams, both in his statement to the District Attorney later that day and his testimony at the state post-conviction hearing, Robinson attacked him with a garden rake. McWilliams backed away from Robinson and then struck Robinson with the barrel of a shotgun that he had grabbed from his wife. Robinson fell to the ground. The next thing McWilliams remembered was that he dragged Robinson outside the gate and attempted to revive him.

When McWilliams realized that Robinson was dead, he drove directly to the chief of police and told him what had happened. Within an hour the District Attorney came to McWilliams' house and took a statement. McWilliams was still under the influence of alcohol.

McWilliams' wife gave a different version of the facts. She stated that McWilliams had provoked the fight and had brutally beaten Robinson.

On Saturday evening, McWilliams was arrested for first degree murder. On Monday, June 23, McWilliams was formally charged with first degree murder and was ordered held without bond.

Later, the District Attorney told McWilliams that the State had a "very strong first degree murder charge" against McWilliams. The penalty for first degree murder was death.

McWilliams claims that the District Attorney offered to reduce the offense to second degree murder if he would plead guilty and that the District Attorney told him that he (McWilliams) could be paroled within six months, or at most two years, if he entered a plea of guilty to second degree murder.

At the post-conviction hearing, the District Attorney claimed that McWilliams himself suggested the reduced plea and that he reluctantly accepted it. In addition, the District Attorney denied that he told McWilliams that he could be paroled in less than seven years.

The District Attorney thought that he explained the elements of first and second degree murder to McWilliams, but he admitted that he did not explain to McWilliams the definition of "purposely," "maliciously," or "feloniously." Nor did he or anyone else explain manslaughter or other lesser included offenses or the defenses of intoxication or self-defense. No one discussed with McWilliams the admissibility of his statement or the admissibility of his wife's testimony at the trial.

At 9:30 A.M. on Wednesday, June 25, McWilliams waived preliminary hearing and was bound over to the grand jury. One hour later, McWilliams appeared in Circuit Court with the District Attorney; he waived assistance of counsel and indictment, entered a plea of guilty to second degree murder, and was sentenced to life imprisonment. McWilliams told the

court that his act was voluntary and that no promises had been made to him.

McWilliams contends that he is entitled to this writ of habeas corpus because his waiver of counsel and indictment and his guilty plea are invalid because they were not voluntary and intelligent.

McWilliams sought post-conviction relief in the Oregon courts. Relief was denied. McWilliams v. Gladden, 242 Or. 333, 407 P.2d 833 (1965). The Court found that McWilliams had voluntarily and intelligently waived counsel and indictment and had also voluntarily and intelligently entered his guilty plea because he had the mental capacity to understand fully the nature of the right he was waiving and his choice was free of oppressive tactics.

The question here is whether McWilliams' waivers and plea were voluntary and intelligent under the requirements of the Federal Constitution.

██ Although the right to counsel can be waived, the trial judge must be satisfied that the accused did so voluntarily and intelligently. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). A knowing and intelligent waiver requires more than mental capacity.

McWilliams had an eighth grade education. From the time of his arrest until he was sentenced, he had no visitors; he had no attorney; he had no communications with friends, relatives, or any persons other than the District Attorney, the Sheriff, the District Judge, and the Circuit Judge. No one explained to him the differences between manslaughter and second degree murder, nor did anyone explore possible defenses or mitigating circumstances to the charge. No one explained the elements of first or second degree murder.

McWilliams' statement to the District Attorney immediately after the homicide, while McWilliams was still under the influence of alcohol, suggests that manslaughter may have been the proper

charge or that McWilliams may have been able to prove self-defense. The racial overtones of the homicide (McWilliams was a Caucasian, his wife was an Indian, and Robinson, her paramour, was a Negro) and the circumstances of the fight would have been relevant to any attorney who might have defended McWilliams. No one explored on behalf of McWilliams any aspect of the case. McWilliams had no experience with the law; he had never been arrested before except for minor traffic violations. The District Attorney advised him that the State had a "very strong first degree murder charge" against him, which, in the light of the information the District Attorney knew, was of doubtful accuracy.

The District Attorney should have informed the Court of the relationship of the parties with each other, the drinking at the time, and the other circumstances of the homicide of which he was aware, and he should have also informed the Court of the defendant's oral and written exculpatory statements made to him shortly after the homicide. The judge's general, abstract questioning of McWilliams did not disclose any of the facts of the homicide or any of the circumstances under which McWilliams' plea was tendered. Due process requires a judge to find out whether there is a factual basis for the alleged crime before he accepts a guilty plea requiring a life sentence from a defendant who is not represented by counsel.

I cannot believe that the judge would have accepted a guilty plea to second degree murder in this case if he knew the circumstances of the fight, the relationship of the parties, McWilliams' intoxication, and McWilliams' statement that he acted in self-defense. The District Attorney should have disclosed these facts, and a penetrating and comprehensive examination of all the circumstances by the judge would have revealed the necessity of providing McWilliams with independent legal advice before accepting his plea.

I agree with Justice Denecke's dissenting opinion in McWilliams v. Gladden, supra, that McWilliams did not voluntarily and intelligently waive counsel and indictment and enter his guilty plea.

McWilliams' waivers of counsel and indictment, his guilty plea, and the judgment of conviction and sentence are set aside, and his petition for a writ of habeas corpus is granted.

This opinion shall constitute findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.