Argued December 4, 1967, affirmed July 17, 1968

DANIEL ARTHUR MIOTKE, *Appellant, v.*
GLADDEN, *Respondent.*
443 P. 2d 617

*Lawrence A. Aschenbrenner,* Public Defender, Salem, argued the cause and filed a brief for appellant.

*Helen B. Kalil,* Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief was Robert Y. Thornton, Attorney General, Salem.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

McALLISTER, J.

The petitioner, Daniel Miotke, was convicted on July 15, 1963, of rape of his wife's daughter, ORS 163.220, and was sentenced to the penitentiary for life. The primary evidence of guilt at petitioner's trial was a confession made by petitioner while a prisoner in the Umatilla county jail. In his post-conviction proceeding petitioner alleged that his confession was involuntary. The trial judge held to the contrary and dismissed the petition. Petitioner appeals, and challenges only the voluntariness of his confession.

■ ORS 138.650 provides that the scope of review by this court in post-conviction proceedings shall be the same "as that provided by law for appeals in criminal actions." In criminal actions we may review "only as to questions of law appearing upon the record." ORS 138.220.[1] We have no authority in criminal actions to re-examine disputed questions of fact. *State v. Moore,* 194 Or 232, 243, 241 P2d 455 (1952); *State v. Reynolds,* 160 Or 445, 471, 86 P2d 413 (1939); *State v. Kingsley,*

[1] ORS 138.220 "Upon an appeal, the judgment or order appealed from can be reviewed only as to questions of law appearing upon the record."

137 Or 305, 324, 2 P2d 3, 3 P2d 113 (1931); *State v. Wilson,* 6 Or 428 (1877).

■ The legislative intent to limit our review in post-conviction proceedings to questions of law is further indicated by ORS 138.660, which authorized this court to summarily dismiss a post-conviction appeal which presents "no substantial question of law." Collins and Neil, *The Oregon Postconviction-Hearing Act,* 39 Or L Rev 337, 361 (1960). The statutory restriction of our review to questions of law does not, of course, prevent this court from examining the record of conviction in a criminal action or the record in a post-conviction proceeding to make certain that constitutionally acceptable standards were applied by the trial court in making its findings or drawing conclusions from the relevant facts. See *Lawson v. Gladden,* 245 Or 492, 422 P2d 681 (1967).

■■ Since there was substantial evidence to support the finding of the trial court, it is binding on us. *Alcorn v. Gladden,* 237 Or 106, 111, 390 P2d 625 (1964). We could reverse only if we found as a matter of law from all the circumstances, including the facts as found by the trial court, that there had been a substantial denial of petitioner's rights under the Constitution of the United States or the Constitution of the State of Oregon, or both, which rendered the conviction void. *State v. Krogness,* 238 Or 135, 149, 388 P2d 120, cert. den. 377 US 992, 84 S Ct 1919, 12 LEd2d 1045 (1964). There is nothing to suggest such a finding in this case.

The judgment is affirmed.

O'CONNELL, J., specially concurring.

There is language in the majority opinion which may cause confusion in the future and therefore I feel obligated to comment upon it.

We are concerned in this case with the scope of appellate review where the issue is the voluntariness of a confession. The opinion states that "[i]n criminal actions we may review 'only as to questions of law appearing upon the record.' * * * We have no authority in criminal actions to re-examine disputed questions of fact."

These statements may lead the reader to think that the voluntariness of a confession is simply a question of fact and that on appeal we are bound by the determination made in the trial court, if reasonable minds could reach the conclusion which was reached below. That, of course, is not true.

The inquiry as to whether a confession is voluntary involves not only the question of what happened but also the question of whether the events which did occur constituted an invasion of the constitutional rights of the accused. If the circumstances under which the confession was made are undisputed, there is little difficulty in seeing that it is our duty on appeal to determine whether such circumstances add up to a deprivation of a constitutional right.

However, if the circumstances attendant upon the confession are in dispute, the scope of appellate review is more difficult to explain and it is in this area that the majority opinion may be misleading. The principal opinion can be interpreted as saying that when the "facts" are in dispute this court must accept the conclusion of the trial court in the resolution of that dispute.

The court seems to treat the question of the voluntariness of a confession as a question of fact, and to hold that we are bound by the trial court's finding that the confession was voluntarily made. The difficulty

with this approach is that the question of whether a confession is voluntary is determined not simply by the resolution of disputed facts, but also by the application of a constitutional principle to those facts. Moreover, where the facts are in dispute, the choice that is made between the conflicting version of the facts may depend upon one's understanding of the constitutional principle which is involved. If, for example, an arrest is made for a game violation upon seeing a rifle in the back seat of a car, as in *State v. Krogness,* 238 Or 135, 388 P2d 120 (1963), cert. den., 377 US 992, 84 S Ct 1919, 12 L ed2d 1045, and the arresting officer testifies that he searched the trunk of the car to find a bird, the trial court might well believe the officer and find the necessary probable cause, but I do not not regard this finding as binding upon us. Probable cause is the product of one's view of the facts necessary to afford constitutional protection against illegal arrest or search. One judge may feel that police officers should have broad powers of search; another judge may feel that search should be narrowly restricted. The divergence in their views as to what facts are necessary to constitute probable cause expresses their view as to the scope of the constitutional principle embodied in the Fourth Amendment.

And so with voluntariness of a confession. Whether the conduct of a police officer in eliciting a confession moves up the scale to a point marked involuntariness will depend upon the judge's view of the importance of protecting the accused from possible coercive police conduct as a guarantee of his constitutional right. If the court feels that the protection of the accused cannot be guaranteed by leaving a question of fact open to dispute, it will eliminate the contest as to the disputed fact and convert it into a principle of law. This is what

occurred when, in *Escobedo*[1] and *Miranda*,[2] the court eliminated the necessity for inquiring into the voluntariness of the statement made when the accused was interrogated under certain circumstances.

I suspect that the ambiguity in the majority opinion is caused in part by the failure to see the distinction between the function of an appellate court in reviewing so-called "constitutional facts" and other kinds of facts. The United States Supreme Court has repeatedly insisted upon reviewing "constitutional facts" not only in criminal cases but in civil cases as well. A good review of these cases is found in Strong, The Persistent Doctrine of "Constitutional Fact," 46 N C L Rev 223 (1968).[3]

Excerpts from these cases illustrate the court's position in these cases. Thus in *Payne v. Arkansas,* 356 US 560, 562, 78 S Ct 844, 2 L ed2d 975 (1958), the court said:

"\* \* \* [W]here the claim is that the prisoner's confession is the product of coercion we are bound to make our own examination of the record to determine whether the claim is meritorious. 'The

---

[1] Escobedo v. Illinois, 378 US 478, 84 S Ct 1758, 12 L ed2d 977 (1964).

[2] Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L ed2d 694, 10 ALR3d 974 (1966).

[3] Additional discussions are found in Berman, Supreme Court Review of State Court "Findings of Fact" in Certain Criminal Cases: The Fact-Law Dichotomy in a Narrow Area, 23 So Cal L Rev 334 (1950); Paulsen, The Fourteenth Amendment and the Third Degree, 6 Stan L Rev 411, 431-37 (1954); Ritz, Twenty-Five Years of State Criminal Confession Cases in the U. S. Supreme Court, 19 Wash & Lee L Rev 35 (1962); Targan, Justice Black—Inherent Coercion: An Analytical Study of the Standard for Determining the Voluntariness of a Confession, 10 Am U L Rev 53 (1961); Developments in the Law of Confessions, 79 Harv L Rev 938, 961-984 (1966); 4 Davis, Administrative Law Treatise §§ 30.01–30.11 (1958); Jaffe, Judicial Control of Administrative Action, 645–655 (1965). Cf., Lockhart and McClure, Censorship of Obscenity, 45 Minn L Rev 5, 114-120 (1960).

performance of this duty cannot be foreclosed by the finding of a court, or the verdict of a jury, or both.' *Lisenba v. California*, 314 US 219, 237-38. The question for our decision then is whether the confession was coerced. That question can be answered only by reviewing the circumstances under which the confession was made."

And in *Chambers v. Florida*, 309 US 227, 228, 60 S Ct 472, 84 L ed 716 (1940):

"* * * Since petitioners have seasonably asserted the right under the federal Constitution to have their guilt or innocence of a capital crime determined without reliance upon confessions obtained by means proscribed by the due process clause of the Fourteenth Amendment, we must determine independently whether petitioners' confessions were so obtained, by review of the facts upon which that issue necessarily turns."

And in *Ashcraft v. Tennessee*, 322 US 143, 147, 64 S Ct 921, 88 L ed 1192 (1944):

"This treatment of the confessions by the two state courts, the manner of the confessions' submission to the jury, and the emphasis upon the great weight to be given confessions make all the more important the kind of 'independent examination' of petitioners' claims which, in any event, we are bound to make. *Lisenba v. California*, 314 U.S. 219, 237-38. Our duty to make that examination could not have been 'foreclosed by the finding of a court, or the verdict of a jury, or both.' We proceed therefore to consider the evidence relating to the circumstances out of which the alleged confessions came."

And in *Haynes v. Washington*, 373 US 503, 515-16, 83 S Ct 1336, 10 L ed2d 513 (1963):

"It is well settled that the duty of constitutional adjudication resting upon this Court requires that the question whether the Due Process Clause of

the Fourteenth Amendment has been violated by the admission into evidence of a coerced confession be the subject of an *independent* determination here. ٭ ٭ ٭ [W]e cannot avoid our responsibilities by permitting ourselves to be 'completely bound by state court determination of any issue essential to decision of a claim of federal right, else federal law could be frustrated by distorted fact finding.' Stein v. New York, 346 U.S. 156, 181. ٭ ٭ ٭ [A]s declared in Ward v. Texas, 316 U.S. 547, 550, 'when, as in this case, the question is properly raised as to whether a defendant has been denied the due process of law ٭ ٭ ٭ we cannot be precluded by the verdict of a jury from determining whether the circumstances under which the confession was made were such that its admission in evidence amounts to a denial of due process.' "

A study of the United States Supreme Court cases further demonstrates the point made earlier that as a constitutional principle is refined the court may convert a question of fact formerly resolved by the jury or court below into a question of law tested by an external standard applied by the court on appeal. The standard may take the form of procedural fairness in the application of which, on appeal, disputed questions are resolved by an independent review of the facts.

The view I have expressed here is in accord with that taken in *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

DENECKE, J., joins in this opinion.