Argued May 9, affirmed July 25, 1968

THOMAS PATRICK SCHRAM, *Appellant, v.*
GLADDEN, *Respondent.*

444 P. 2d 6

*John. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Lawrence A. Aschenbrenner, Public Defender, Salem.

*David H. Blunt,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

PERRY, C. J.

The petitioner brought this proceeding for post-conviction relief. Upon a full hearing, his petition was denied and he appeals.

The record shows that on March 13, 1964, the petitioner was convicted of the crime of burglary in Multnomah county. On August 26, 1964, the Circuit Court for Multnomah County adjudged the petitioner to be an habitual criminal and sentenced him to twenty years in the Oregon State Penitentiary.

In the recidivist trial, the state relied upon four prior felony convictions, although any three prior felony convictions were sufficient to prove the petitioner's status and justify the sentence imposed.

The petitioner concedes that the two prior convictions in Multnomah county are valid, but contends that the two prior convictions in Klamath county are void.

The trial court did not pass upon the validity of the first conviction in Klamath county in 1946, and neither do we. The trial court did find petitioner's conviction in Klamath county in 1952 to be valid, and it is this holding that is challenged by this appeal.

Petitioner's contention is that in the 1952 proceedings he did not knowingly and understandingly waive his right to counsel, and that he did not knowingly and understandingly enter his plea of guilty.

■■ It must be kept in mind that a petition for post-conviction relief is a collateral attack upon a judgment of the court which carries a presumption of regularity, and "where a defendant, without counsel, acquiesces in a trial resulting in his conviction  *  *  * the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel." *Johnson v. Zerbst,* 304 US 458, 468, 58 S Ct 1019, 82 L ed 1461.

The judgment record in the 1952 proceeding in Klamath county recites:

> "*  *  *  and the defendant having been advised by the court of his right to be represented by counsel, and the defendant having stated that he did not desire counsel; and the said defendant having been fully advised of his right to be indicted by the Grand Jury of Klamath County, Oregon, did then and there in writing, in open court, waive the right of indictment."

Petitioner thereafter entered his plea of guilty.

■ In *Carnley v. Cochran,* 369 US 506, 516, 82 S Ct 884, 8 L ed 2d 70, 77, the Supreme Court of the United States stated:

> "*  *  *  Presuming waiver from a silent record is impermissible. *The record must show,* or there must be an allegation and evidence which

show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not a waiver." (Emphasis supplied)

This statement of the Supreme Court of the United States discloses that a waiver of counsel may be established in two ways, either by the trial court record or by proof dehors the record. We followed this opinion when we stated in *Miller v. Gladden*, 249 Or 51, 437 P2d 119, 121:

"* * * If a knowing waiver is not shown by the court's records, and petitioner testifies he had no knowledge of his right to be represented, *the burden is upon the state to prove circumstances from which the post-conviction trial judge can and is willing to infer that petitioner had knowledge of this right.* This the state did not do. This case falls within the holdings of Doane v. Gladden, 246 Or 183, 424 P2d 234 (1967) and Lawson v. Gladden, 245 Or 492, 422 P2d 681 (1967), where the transcripts of the arraignments failed to show that petitioners were advised of their right to appointed counsel at government expense, and there was no evidence in the post-conviction proceedings that petitioners had *any independent knowledge thereof.*" (Emphasis supplied.)

While the record in the trial court discloses that the petitioner was "advised of his right" to counsel and he "stated he did not desire counsel," the trial court presumably, because the record did not state that petitioner was specifically advised that he was entitled to court appointed counsel, heard evidence upon the issue of waiver. The trial court then made the following material findings:

"He was advised of his right to counsel, but he was not specifically advised that he could have counsel at public expense.

"However, at that time, the petitioner was aware of his right to court appointed counsel. He had had such counsel in Multnomah County in 1948. The petitioner voluntarily, understandingly and freely, without any coercion or threats, waived his right to counsel and his right to Grand Jury investigation."

The facts upon which the trial court made the finding that petitioner knew of his right to court appointed counsel are as follows:

The petitioner was indicted in Multnomah county for two separate crimes of "robbery by putting in fear of force and violence, not being armed with a dangerous weapon." On September 23, 1948, he appeared in the circuit court. The record in that court states:

"Said defendant states that he is truly named in said indictment, and *defendant at this time stating that he is without funds to retain his own counsel and requesting the court to appoint suitable counsel to represent him,* thereupon the court ordered that Tom Kerrigan be and he is hereby appointed to represent the defendant." (Emphasis supplied.)

The Multnomah county record also discloses that on the 25th day of September, 1948, "the defendant Thomas Patrick Schram appearing in person, in custody of the sheriff, and with his attorney Tom Kerrigan" entered his plea of "not guilty." The record also states that more than a month after the entry of the plea of "not guilty," the attorney asked leave to withdraw as counsel of record for the defendant in language as follows:

"Comes now T. M. Kerrigan, duly appointed and acting Attorney of record in the above designated case, he having been duly appointed by this

Court to represent the above named defendant upon the representation of the defendant that he was without funds and unable to retain his own counsel and upon the request of the defendant that the Court do appoint suitable counsel to represent him, and petitions this Court that he be removed as such Counsel for the reason that the defendant through others and acting by himself has negotiated with others to act as his Attorney in the above named case and further has stated to your petitioner that his services are not further required; and based upon the foregoing facts your petitioner desires to be dismissed as Attorney of record as appointed by this Court."

This record further discloses that on December 10, 1948, the defendant (petitioner herein) appeared in court with his substituted attorney L. B. Sandblast and entered his pleas of "guilty."

■ The above facts fully disclose that petitioner was well aware of his right to court-appointed counsel when he declined counsel in Klamath county.

■ Petitioner also argues that, even if he knowingly and understandingly waived his right to counsel, he could not knowingly and understandingly enter a plea of guilty because he did not know the nature of the crime or the range of allowable punishment.

This argument has a hollow ring. The crime to which he pleaded guilty in Klamath county in 1952 is identical with the crimes he had pleaded guilty to in Multnomah county in 1948 when represented by counsel. And, while the petitioner testified his attorneys in Multnomah county never advised him of the nature of the crime or the allowable punishment during the five months he was incarcerated awaiting trial, such an assertion is unworthy of belief when he also states that he changed his plea from "not guilty" to "guilty"

when his attorney told him "he had arranged for me to get a four year term to run concurrently."

The judgment of the trial court is affirmed.

DENECKE, J., dissenting.

I dissent upon the ground that there was no evidence that the petitioner intelligently waived his right to counsel or understandingly entered his plea of guilty to the 1952 Klamath County conviction.

There was no court reporter's transcript of what occurred at arraignment. The official Klamath County document, entitled "Waiver, Arraignment and Plea," recites:

"* * * [A]nd the defendant having been advised by the Court of his right to be represented by counsel, and the defendant having stated that he did not desire counsel; and the said defendant having been fully advised of his right to be indicted by the Grand Jury of Klamath County, Oregon, did then and there in writing, in open court, waive the right of indictment and consented that the District Attorney file an Information charging him with the commission of the crime of ROBBERY BY PUTTING IN FEAR OF FORCE AND VIOLENCE, NOT BEING ARMED WITH A DANGEROUS WEAPON, * * *."

At the post-conviction hearing the petitioner testified that no one informed him of the nature of the charge against him, of the elements or acts constituting the crime of unarmed robbery, of any possible defenses to said charge, or of the maximum sentence that could be imposed. This was not contradicted by any other evidence.

*McWilliams v. Gladden,* 242 Or 333, 407 P2d 833 (1966), involved a waiver of counsel and arose from a

plea of guilty made in the same county and before the same judge as in the present case. McWilliams was given more advice than the present petitioner. He was informed by the District Attorney of the elements of the crime with which he was charged and of the maximum sentence. A divided court held he had knowingly waived his right to counsel and the conviction was valid. In *McWilliams v. Randall,* 275 F Supp 700 (DC Or 1967), the United States District Court granted McWilliams' petition for a writ of habeas corpus, holding that McWilliams was not adequately advised of his rights before pleading guilty without counsel, and, therefore, "did not voluntarily and intelligently waive counsel and indictment and enter his guilty plea." 275 F Supp at 703.

The decision in *McWilliams v. Randall,* supra (275 F Supp 700), was forecast by the decision in *Sessions v. Wilson,* 372 F2d 366 (9th Cir 1967).

In light of *McWilliams v. Randall,* supra (275 F Supp 700), and *Sessions v. Wilson,* supra (372 F2d 366), I am of the opinion that Schram did not waive his right to counsel and knowingly enter his plea of guilty to the 1952 Klamath County charge.

The majority holds that it was not necessary for the trial court or anyone else to advise the petitioner of anything except his right to counsel before taking his plea of guilty because four years before in Multnomah County petitioner, while represented by counsel, had pleaded guilty to the same kind of crime, robbery by putting in fear. The majority apparently assumes that at that time petitioner was advised of the elements of the crime and the maximum sentence.

In my opinion, explaining the abstract elements of the crime of robbery by putting in fear four years earlier to a man with a ninth grade education is not

a constitutional substitute for the kind of knowledge that must be imparted to any defendant before his guilty plea can be accepted. Either counsel or the trial court, if waiver of counsel is permitted, has the burden of securing the defendant's version of the basic facts and interpreting the significance of those facts to the defendant in light of the crime charged and the possible penalties.

SLOAN and O'CONNELL, JJ., join in this dissent.